HARRY UNWEN, PROSECUTOR, v. THE STATE OF NEW JERSEY.

Submitted March 24, 1906—Decided June 11, 1906.

1. The provisions of section 2 of an act defining motor vehicles and providing for the registration of the same (*Pamph. L.* 1905, *p.* 484), which provisions require every resident or non-resident owner to file a verified declaration that he is competent to drive a motor vehicle, and a statement of the name and address of the owner, of the maker, and number of the machine and its rated

horse-power, and requiring the payment of a fee of one dollar, and requiring the registration of each machine by the secretary of state and the issuance by him of a certificate to the owner, are not in contravention of the state or federal constitutions.

2.  The provisions for the statements by the owner, and for registration and license, are within the exercise of the police power of the state for the purpose of securing the safety of the public in the use of the highways against the danger of a new use by a powerful, rapidly-moving machine which requires careful and skilled drivers. ,

3.  The designated fee of one dollar is a valid license fee.

On *certiorari*.

Before Justices FORT, PITNEY and REED.

For the plaintiff in *certiorari, Frank H. Hall* and *Charles Thaddeus Terry* (of the New York bar).

For the state, *Edward D. Duffield.*

The opinion of the court was delivered by

REED, J.   The prosecutor was convicted before the First Criminal Court of Jersey City of violating the provisions of "A supplement to an act entitled 'An act defining motor vehicles and providing for the registration of the same and uniform rules regulating the use and speed thereof.' " *Pamph. L.* 1905, *p.* 484.   The specific charge was that the prosecutor drove an automobile along a public highway in Jersey City without having previously filed in the office of the secretary of state a duly-verified declaration, setting forth that he was competent to drive said automobile, and a written statement containing his name, address, a description of the character of his automobile, the name of the maker, manufacturer's number and the horse-power thereof, and without having previously paid to the secretary of state the registry fee of one dollar.   Also, that the prosecutor, when requested by a patrolman of the police department, did not state the number under which the automobile was registered under the said act.

The conviction was affirmed by the Court of Common Pleas of Hudson county. This writ brings up the last judgment.

On the trial it appeared that the prosecutor was a resident of the State of New York, and that his automobile had been registered in that state in compliance with its statute. It appeared that he had not conformed with those provisions of the New Jersey act, the violation of which is charged in the complaint.

The single question presented now, is whether these provisions are constitutional. It is assigned as a reason why the conviction should be reversed that these provisions are in contravention of the provisions of article 4, section 2 of the constitution of the United States; that they are in contravention of section 1 of the fourteenth amendment of that instrument, and that they contravene our state constitution.

. It will first be inquired if these provisions are obnoxious to our state constitution. Are they a legitimate exercise of the police power with which the state is invested?

No one will question the right of the state to regulate the method by which the public shall use the public highways. Such regulation, either directly or by a body to which such power is delegated, is essential to the safety and comfort of those who use a road or street. A simple and familiar instance of the exercise of this power is seen in the statutory direction that the drivers of vehicles meeting shall turn to the right or left, or, if one wishes to pass another, he shall do so to the right or left of the vehicle in front.

Indeed, no affair has been more frequently the subject of direct legislative regulation or delegated control than the manner in which the public streets shall be used. *Dill. Mun. Corp.*, § 326.

Perhaps the cases which bear most closely upon the question now presented are those dealing with regulations respecting the use of streets by street railroad companies. It is true that it requires a franchise before a street can be occupied by such a road. When, however, the franchise is once granted, the use by such road stands upon the same footing as any other use of the street in respect to any subsequent regulation.

*North Hudson County Railway* v. *Hoboken,* 12 *Vroom* 71. The introduction of heavy cars, propelled by electricity and capable of great speed, presented for the first time a new danger to pedestrians and to the drivers and occupants of horse-drawn vehicles using the same streets.

For the purpose of protecting these users of the highway, a number of regulations limiting the speed of these cars, requiring a license fee for each car, requiring that certain lights and signals at night should be displayed and that adequate brakes should be employed, have received judicial sanction. In *Trenton Horse Railroad Co.* v. *Trenton,* 24 *Vroom* 132, an ordinance requiring the company to employ an agent, in addition to the driver, to assist in the control of the car and to prevent accidents, was held to be valid. In *Traction Company* v. *Elizabeth,* 29 *Id.* 619, an ordinance prohibiting the placing of salt on any street was upheld. In *Cape May Railroad Co.* v. *Cape May,* 30 *Id.* 393, an ordinance limiting the rate of speed of trolley cars was sustained. In *Cape May Railroad Co.* v. *Cape May, Id.* 396, it was held that under the power to regulate the use of the public streets the common council could compel a trolley company to place fenders on the front of each car. In the opinion in this last case will be found a citation of many authorities illustrating the exertion of a control over such companies in their use of the streets. In the opinion in that case, it was said that the ordinance could be tested only in view of the extraordinary propulsive power by which such cars are operated, and the danger arising from the high rate of speed which may be attained, and other dangers incident to their operation in the streets.

Now, turning from the trolley car to the automobile, we see introduced into use on the highways a vehicle propelled by a power as great and capable of attaining speed still greater than a trolley car. We see a machine confined to no part of the street, and which, if driven by an inexperienced or reckless driver, is a menace to all who are entitled to use the street. It seems too obvious for further remark that the legislature has the same right to protect other users of the highways against these dangers as it has to guard them against

the unrestricted movements of a trolley car. Therefore, the provisions of the statute which limit the rate of speed, which require the display of signals and the use of efficient brakes, are all appropriate to preserve safety in the use of the road. These requirements, however, will be practically useless unless violators thereof can be detected and punished. The rapidity with which the machines can move renders detection almost impossible, and the arrest of those violators equally difficult. For the purpose of aiding in the identification of each machine and of those who are responsible for its movements and conduct, the provisions of section 2 of the amended act are designed. To attain this purpose, the compelled registration of the machine, with the name of its owner, together with the other particulars descriptive of the machine itself, are, if not efficient, at least suitable. So is the required license to the owner and the certificate of the registration of his machine.

But it is insisted that the required license fee of one dollar is a tax upon automobiles and imposes upon the owner a double burden of taxation, which is unconstitutional.

The designated fee is clearly not a tax upon property. Whether it can be regarded as a tax upon an occupation, which, under our constitution, is entirely distinct from tax upon property, need not be considered. It need not be considered because it is obvious that the fee mentioned is imposed as a license fee and not an impost on either property or occupation. Now, assuming, but not admitting, that the power of the legislature itself is as limited as that of a municipal common council, to which power is delegated to license, but not to tax, still there is nothing in the present provision which is in excess of such a power to license.

It is entirely settled that under the police power a license fee can be imposed within the limit of the expense necessarily or probably incurred in issuing the license and of inspecting and regulating the business the license covers.

Indeed, there are authorities holding that for licensing amusements, exhibitions, the keeping of animals, &c., the fee

exacted may be still greater. *North Hudson County Railway v. Hoboken,* 12 *Vroom* 71, 82.

There is nothing to show that the fee of one dollar for each license is in excess of the expense of registration and issuing the license, regardless of any expense of inspection and regulation of the use of these machines.

Nor does the special provisions relating to dealers create any injurious distinction between owners of automobiles. The limited period covered by the license to dealers in respect to any one machine, and the other circumstances which distinguish the situation of a dealer from that of another private owner, renders the special provision respecting the increased fee to be paid by the dealer entirely appropriate.

The conclusion that this imposition is a license fee to be paid for the privilege of having a machine run upon a highway is not a tax seems to dispose of all the constitutional objections resting upon assumed double or special taxation.

Regarded as a license fee, it certainly infringes no provision of our constitution, nor any section of the federal constitution. It applies to all who drive machines in this state, whether resident or non-resident owners. There is no infringement upon the privileges or immunities of any citizen of another state.

Nor does the fourteenth amendment to the federal constitution touch these provisions at all. If, as we have concluded, this legislation is a legitimate exercise of the police power, it is unaffected by that amendment. The only question which the federal courts will consider in dealing with state legislation of this character is whether it is within the police power with which each state is invested. *Slaughter-house Cases,* 16 *Wall.* 394; *Barber* v. *Connolly,* 113 *U. S.* 27; *Minneapolis* v. *Beckwith,* 129 *Id.* 26; *Lawton* v. *Steele,* 152 *Id.* 133; *L'Hote* v. *New Orleans,* 177 *Id.* 587. If it is, then it is no infringement of that amendment.

The judgment should be affirmed.